CHARLES SCHOCK vs. ALLAN V. LESLEY.

———

ALLAN V. LESLEY vs. CHARLES SCHOCK.

*Kent, Sept. T.* 1862.

A sale of land, in execution of a judgment on a bond accompanying a mortgage—the sale being for a part only of the debt secured by the bond and mortgage—does not discharge the mortgage as a security for the residue of the debt.

C. S. having purchased from A. V. L. a farm, assigned to him, as the consideration therefor, a bond and mortgage for $4500, executed by J. F. payable in nine annual installments, of $500 each. At the same time, C. S. gave to A. V. L. his own bond and mortgage for $1500, made payable in three annual installments of $500 each, to correspond with the first three installments of the assigned mortgage, and took from A. V. L. a power of attorney, authorizing him "to collect" the first three installments of the assigned bond and mortgage, as an indemnity against his own bond and mortgage:—

*Held* that, upon the true construction of the agreement of the parties and of the power of attorney, C. S. was authorized to collect the first three installments of the assigned bond and mortgage by execution of a judgment entered on the bond, and not alone by voluntary payments from the debtor;

*Held also* that, independently of express agreement and on principles of general equity, C. S. being a surety for the first three installments, was entitled, to the extent of payments which had been made by him, to the benefit of all securities in A. V. L's. hands.

These were cross bills, filed under the following circumstances :

On the 22d of August, 1859, Allan V. Lesley sold and conveyed to Charles Schock a farm, situated in Kent county ; and, for the consideration, Schock assigned to Lesley a judgment bond and mortgage of John Fleming for $4500. The bond and mortgage were payable in nine annual installments, of $500 each, the first falling due March 1st, 1859. Lesley also took from Schock his own judgment bond and mortgage for $1500, which was made payable in three annual installments, of $500 each, these installments being made to fall due so as to correspond with the first three installments of the Fleming bond and mortgage.

The sale referred to was made pursuant to a written agreement between the parties, whereby, after setting forth the terms of sale and that the bond and mortgage from Fleming was to be assigned to Lesley as the consideration,

39

it was stipulated by Schock that he would secure to the said Lesley, by a mortgage on the above named farm purchased from the said Lesley, the sum of $1500 of the first three installments on said assigned mortgage and the interest on said $1500, to be paid to the said Lesley, as follows : i. e. in three installments of $500 each, with interest on the whole sum unpaid, on the first day of March in each of the years 1860, 1861 and 1862. It was further agreed that Lesley should give to Schock a power of attorney empowering him, " to collect the installments due on the said assigned mortgage and the interest due and to become due thereon, and to appropriate the same to the payment of the said mortgage of $1500, until the whole sum of $1500 and interest as aforesaid is fully paid and satisfied; and when the said $1500 and the interest thereon is fully paid, the said Lesley shall and will release the aforesaid mortgage of $1500 against the said Schock and take the aforesaid mortgage against the aforesaid Fleming without recourse to the said Schock, or any other property, real or personal that he may possess." Lesley on the 25th of August, 1859, gave to Schock a power of attorney authorizing him, in terms, " to collect the following sums from John Fleming, which are due or to become due on a certain mortgage which was given by him, the said Fleming, to the said Schock, and assigned by the last named to the undersigned, in accordance with the terms of an agreement entered into by and between the said Charles Schock and A. V. Lesley, as follows, to wit : $500, principal, and $45, interest, on or before March 1st, 1860 ; $500, principal, and $60, interest, on or before March 1st, 1861 ; and $500, principal, and $30, interest, on or before March 1st, 1862—said sums, when collected, to be applied to the payment of the installments and interest on a mortgage of the said Schock and wife to the said Lesley, dated September 2d, 1859."

Schock paid Lesley the first installment of $500 due

March 1st, 1860, with interest on the whole $1500 to that day, according to the terms of his bond and mortgage. He had collected from Fleming only $150 ; and being unable, as alleged in his bill and in his answer to Lesley's cross-bill, to collect from Fleming any more money by voluntary payment, and the second installment falling due, he pro-ceeded by a *fieri facias,* returnable to the April T. 1861, on the judgment which had been entered on Fleming's bond at his suit for Lesley's use, to collect the first two install-ments, with the interest, for the purpose, as he alleged, of applying the proceeds to the installments of his own bond and mortgage, now due and payable to Lesley, pursuant to the objects of the power of attorney. No goods of Fleming being found, the *fieri facias* was levied upon his land, being the same described in the mortgage assigned by Schock to Lesley ; and the land was about to be sold under a *venditioni exponas,* returnable to the April T. 1862, when Lesley, for whose use the judgment on the bond stood, interfered and forbade further proceedings by Schock under the judgment. Schock also sued out a *scire facias* on the Fleming mortgage to the April T. 1862.

At this stage, Schock filed his bill, claiming that Lesley should account for and give credit to him for all moneys collected from him or from Fleming, the same to be cred-ited on his (Schock's) bond and mortgage ; that he should be permitted to collect by execution against Fleming the sums specified in the power of attorney, being the first three installments of the Fleming mortgage, and to apply, of the proceeds of the execution, $405 to his own use, being the accrued interest reserved out of the assignment, and the residue to reimburse himself for the $1500 secured by his own bond and mortgage to Lesley. The bill insisted that the sole object of giving his own bond and mortgage to Lesley for $1500 was to secure the payment of the *first three installments* of the Fleming bond and mortgage, and

that any sums he might have to pay to Lesley he was entitled, under the power of attorney, to reimburse himself out of the first three installments of the Fleming bond and mortgage, he being ultimately responsible, as his bill claimed, only for the difference between what could be made out of Fleming under the first three installments and the $1500 with its interest. The bill prayed that Lesley should be enjoined from revoking the power of attorney or interfering with Schock's right to execution of the judgment against Fleming; also enjoining Lesley from collecting by execution against Schock the third and last installment on his bond and mortgage.

Lesley filed a cross bill, not differing from Schock's in the general facts set forth, but insisting upon a different construction of the transactions between them—that Schock's bond and mortgage for $1500 was given as a collateral security for the whole amount of the Fleming bond and mortgage, Lesley not considering the property mortgaged by Fleming worth $4500; that under the arrangement Schock was to pay him the $1500 secured by his own bond and mortgage, leaving Lesley to depend upon the Fleming mortgage only for $3000; that Schock was to be reimbursed by such *voluntary* payments as he could get from Fleming, for which purpose only the power of attorney was given him, and also out of any excess which the property mortgaged by Fleming might eventually bring over and above the $3000 for which Lesley was to look to it. The bill prayed that Schock might be enjoined from attempting, by legal process, to collect any part of the judgment against Fleming or of his mortgage.

The answers of the respective parties to the bill and cross bill made the same claim which was set up in their respective bills; and, therefore, they need not be here set forth. The controversy turned upon the object for which

Schock's bond and mortgage was given, whether as a collateral security for the whole of the Fleming bond and mortgage or only for the first three installments of it; also upon the construction of the power of attorney given by Lesley, whether it authorized the collection of the sums specified in it by process on the Fleming bond and mortgage or only by voluntary payments on the part of Fleming.

The two causes came before the Chancellor, at the Sept. T. 1862, for a hearing upon the bills, answers, exhibits and depositions.

*C. S. Layton,* for Schock.

*W. C. Spruance* and *J. P. Comegys,* for Lesley.

HARRINGTON, CHANCELLOR.—The papers establish this state of circumstances, surrounding the parties at the time of the contract out of which this litigation grows, and which is proper to be considered in ascertaining what that contract was. Dr. Lesley had a farm in Kent county, which he was willing to sell for $4500. Schock had a debt to that amount due him from John Fleming, secured by the bond of Fleming and a mortgage by Fleming and wife of a farm in Sussex. Lesley was willing to take that debt for his farm, but required an additional security for part of it. Schock agreed to mortgage the Kent farm for $1500, in order to secure payment of the first three installments of Fleming's mortgage; and Lesley agreed he should have the benefit of what could be collected from Fleming on these first three installments, to indemnify him for what he should pay on his mortgage, and that he should have the use of these securities, one or both, to enforce the payment of these three installments from Fleming. In pursuance of this agreement a letter of attorney was made by Lesley,

authorizing Schock to collect the said first three install-
ments due or to become due on the Fleming mortgage.
After that, the balance was to be held by Lesley for his
own use, at his risk. And here commences the first dis-
pute. On the part of Dr. Lesley it is said that this power
of attorney does not extend to the Fleming judgment, does
not even mention it; and that the agreement did not ex-
tend to it; and it is argued by his solicitors (with great
force, if their premises are correct) that, unless this is so by
the terms of the agreement, he cannot be taken to have in-
tended to give Schock the power to execute the judgment
against the mortgaged farm, for that would remove the
lien of the mortgage. On the other side, it is said that the
power to collect the first three installments of the Fleming
debt includes the use of the judgment security as well as
the mortgage; that this was the very matter about which
they were dealing ; that without it Schock had no power
to collect the installments, since he could not sue on the
mortgage, which was not due ; and that an execution of
the judgment, even against the mortgaged farm, to collect
these installments would not remove the mortgage lien as
to the balance.

This, therefore, is an important consideration in ascer-
taining the extent of the agreement.

Schock mortgaged his farm to guaranty to Lesley the
payment of $1500 and interest, being the first three install-
ments of the Fleming debt; and Lesley agreed he should
have these installments to indemnify himself, if they could
be collected, and that he should have power to collect them
from Fleming. He held two securities, viz : a mortgage,
recorded in February, 1857, not yet due, and also a judg-
ment, entered in March, 1857, on which one or more of the
installments were due. Now, on principles of general
equity, independently of express agreement, Schock, being

the surety of Fleming to the amount of these three install-
ments, would have the right to use all the securities in
Lesley's hands; and by the contract Lesley agreed he
should have some power to collect them from Fleming for
his own indemnity. But, he could give no power to use
the mortgage for this purpose until it was due; and all
this bargaining about giving such power and the making
of the letter of attorney itself was about nothing and use-
less unless it extended to the judgment. With that con-
struction it executed precisely the object of the party,
unless such a use of the judgment removed the mortgage
lien for the residue. It secured to Dr. Lesley $1500, the
first three installments, or their equivalent, from Schock's
mortgage, gave Schock his indemnity, and left Lesley his
lien under the Fleming mortgage for the balance.

The effect of a sale of the Fleming land under the judg-
ment is then proper to be considered.

A mortgage is merely a security for payment of the
mortgage money. This is granted. It is a specific lien on
the mortgaged premises for that purpose, while the judg-
ment security is a general lien on all the land of the debtor.
But the mortgage, though a security for the payment of
money, is a security by way of conveyance of title to land,
giving the mortgagee the power, through a purchase, to com-
plete his title to the land. Before foreclosure the mortgagor
has only the right to redeem, on payment of the mortgage
money—a right so valuable and so distinct that he is in some
respects, while in possession, regarded as the owner of the
land. But his right is only an equity of redemption. By
the terms of the mortgage he admits this to be the position
of himself and the mortgagee in relation to the land; and
this mere security for the payment of money, as it is almost
sneeringly called, is after all a serious dealing with the
title, and carries with it the property unless the money is
paid.

The judgment against Fleming bound all the title he had in any land in Sussex county—this, as well as other land. His title to this was an equity of redemption only— a right liable to be sold by execution of this judgment ; and when Lesley agreed to give Schock the power to " collect" these installments of the assigned mortgage he could have referred to no other means of executing that power than by an execution of the judgment.   On such an execution the sheriff would sell only the right which Fleming had, which was a right to have the land back on payment of the balance of the mortgage money, which is usually called selling subject to the mortgage.

I note the fact, though I do not wish to lay stress upon it, that the Fleming mortgage is older than the judgment ; and it is the general rule that land sold on a judgment is subject to prior mortgages, and is so sold.   But I wish to decide the naked question raised in this cause, that land sold on a judgment accompanying a mortgage, for one installment of the mortgage money, is sold subject to the remaining installments of the mortgage.   A different opinion destroys the value of a double security for the payment of mortgage money.   It is the constant practice to sell land and secure the purchase money by a bond payable in installments and a mortgage of the premises at the same time.   The installments can be collected on the bond, as they fall due. If they cannot be thus collected, without destroying the mortgage lien for the balance, it were better not to have the bond.

A case illustrating this point occurred recently in this county.   A. sold to B. a farm for $1800, and took security by bond and mortgage.   The payments were fixed at long intervals.   A. executed the bond for the first installment of $300, and the land sold (supposed to be subject to the mortgage) for $35.   If it were not so subject, the purchaser

would táke the farm for $35, and the mortgage security, not yet due, would be worthless.

It is important, therefore, for it to be known whether the principal security on which the people of this State usually rely for their large investments is any security at all, binding on the land mortgaged or pledged to secure it, or whether it can be defeated and its value destroyed by the collection of any other debt of the mortgagor or even by the enforcement of another security for a part of the same debt.

Let decrees be entered in accordance with this opinion, that is, dismissing Lesley's bill; and in the case of the bill filed by Schock restraining Lesley from revoking his power of attorney, or otherwise interfering with Schock's right to collect by legal process the first three installments of the Fleming mortgage and judgment; Lesley to pay the costs in both cases.

These decrees were reversed by the Court of Errors and Appeals, at the June T. 1865. The appellate Court considered that, upon the true construction of the power of attorney given by Lesley to Schock, the latter was authorized to collect the first three installments of the Fleming mortgage and judgment only by receiving voluntary payments from Fleming, and not by legal process upon the mortgage or judgment. See 3 *Houston's Del. Repts.*, 130.